25646. WOOLFOLK *v.* MATHEWS.

DECIDED OCTOBER 29, 1936. REHEARING DENIED DECEMBER 2, 1936.

*W. H. Harris,* for plaintiff in error. *C. L. Shepard,* contra.

BROYLES, C. J. On March 13, 1934, Mrs. W. M. Mathews brought suit against the Valley Milling Company as principal, and J. W. Woolfolk and R. D. Hale as indorsers, on a note dated May 12, 1924, and due on May 12, 1927, signed under seal by the Valley Milling Company, by J. W. Woolfolk, its president and R. D. Hale, its secretary. The indorsements of J. W. Woolfolk and R. D. Hale on the note were not under seal. On July 25, 1927, the Valley Milling Company executed an agreement extending the time of payment of the note, as follows: $1000 payable on January 25, 1928, and $6500 payable on July 25, 1930. The extension agreement was signed, under seal, by the Valley Milling Company by J. W. Woolfolk, its president, and T. S. Harris, its secretary. The extension agreement was indorsed by J. W. Woolfolk in the same manner that he indorsed the original note. By amendment to the petition it was alleged that Woolfolk and Hale (the indorsers of the original note, and, together with the Valley Milling Company, defendants in this suit) were sureties on the note; that before the date of the extension agreement, "the said J. W. Woolfolk, who was president of the Valley Milling Company at the time of the execution of the original note, and was also president of the Valley Milling Company at the time of the execution of the extension agreement, and who had become liable on the original note as accommodation indorser or surety thereon, represented to plaintiff that the Valley Milling Company was not in position to pay the indebtedness due and owing on the note, that the company was not then operating its business, and that he personally was not in position at that time to pay the indebtedness for which he was liable as surety or accommodation indorser. The said defendant, J. W. Woolfolk, further stated that R. D. Hale, his cosurety on the original note, was no longer interested in the Valley Milling Company, and was insolvent; that if he [Woolfolk] could obtain an extension of the time of payment of said indebtedness, it might be possible for Valley Milling Company to dispose of its assets to advantage, so as to pay off the indebtedness owing to petitioner; and that the extension of the time of payment of the indebtedness by petitioner would be of great advantage and benefit to him personally and possible aid [to] his principal, the Valley Milling Company. At the instance and request of the said J. W. Woolfolk, who was acting in behalf of the

Valley Milling Company, and in his own behalf as surety on the note, petitioner accepted the extension agreement of date July 25, 1927, duly executed by the Valley Milling Company and indorsed by J. W. Woolfolk as surety, the said principal and surety assuming and undertaking the payment of the indebtedness under all the terms of the original note and security deed, and agreeing to pay the principal and interest remaining due thereon as set out in the said extension agreement. It was at the special instance and suggestion of the said J. W. Woolfolk that no effort was made to obtain the indorsement of R. D. Hale as security on the extension agreement." The amendment further set out the credits on the original note, and alleged that, except for the credit from the proceeds of the sale of the property described in the deed from the Valley Milling Company to secure the note sued on, "all payments made on the indebtedness represented by the original note and the extension agreement have been made by the surety, J. W. Woolfolk;" and that "by his indorsement of the extension agreement on July 25, 1927, the said J. W. Woolfolk as surety acknowledged in writing the correctness of the balance then due and owing to the plaintiff in this case and his liability therefor, and from time to time by the payments and entries herein referred to he has evidenced in writing his indebtedness and liability to the plaintiff in this case, and by virtue thereof is obligated and bound to the plaintiff for the sum due and owing as set out in her suit." Embodied in the amendment is a notice to produce certain documentary evidence.

Woolfolk demurred generally and specially to the petition. Certain grounds of special demurrer were abandoned because they were met by the amendment. The court overruled the demurrers, and on this judgment Woolfolk assigns error. The controlling issues raised by the demurrers are as follows: Was the right of action in the plaintiff, Mrs. Mathews? Was the action barred by the statute of limitations? Did the extension agreement affect the liability of Woolfolk? Was the extension agreement without consideration? The first contention arises by virtue of the fact that the note sued on was payable to Mrs. Martha E. Carpenter, and the suit was brought by Mrs. W. M. Mathews, and there was no transfer from the former to the latter. The record shows that Mrs. Carpenter, the payee of the note, is now Mrs. Mathews. The

petition contains numerous expressions such as "The said J. W. Woolfolk represented to plaintiff," "the indebtedness owing to petitioner," "petitioner accepted the extension agreement," "the property described in the deed to secure debt held by petitioner," etc. Since Mrs. W. M. Mathews is the "plaintiff" and the "petitioner," these allegations showing that the debt was owing to the plaintiff and petitioner are equivalent to allegations that the debt was owing to Mrs. W. M. Mathews. The record also refers to canceled checks given by Woolfolk and payable to Mrs. Mathews and to letters written by her attorney and addressed to J. W. Woolfolk, and to "Coupon due Mrs. Martha E. Carpenter (Mrs. W. M. Mathews) January 25, 1930, $260.00, marked paid." These expressions, and others of similar import, when construed with the plain allegation that "The petition of Mrs. W. M. Mathews" shows that the three named defendants "are jointly and severally indebted to your petitioner . . upon a promissory note, copy of which is hereto attached, marked Exhibit A, and made a part hereof," show that the payee in the note, Mrs. Carpenter, is now Mrs. Mathews. The petition alleges that the debt is due *Mrs. Mathews,* and of course she must prove this allegation in order to recover; but, certainly in the absence of a demurrer on this point, she is not required to explain in her pleadings that she has married and thereby changed her name since the note was executed.

The note which Woolfolk indorsed as surety was under seal, and therefore would not be barred by the statute of limitations for twenty years. Woolfolk's indorsement was not under seal. It is unnecessary to determine whether the limitation as to an action against Woolfolk as surety is six years because his indorsement was not under seal, or whether it is twenty years because of his being surety on a note under seal. Under the facts of this case it is not barred in either event. The original note matured on May 12, 1927, and the agreement extending time of payment of the note was executed on July 25, 1927, approximately six years before a signature not under seal could be protected from suit by the statute of limitations. Under the extension agreement the maturity date of said note was extended to July 25, 1930, and the suit was filed on March 13, 1934, approximately two years and four months before the six-year limitation on an unsealed instrument would bar an action. Conceding, but not deciding, that the action

against Woolfolk would be barred after six years from maturity of the original note, the execution of this extension agreement in writing and under seal signed by the principal, the Valley Milling Company, acting by its president J. W. Woolfolk, and its secretary T. S. Harris, and indorsed by J. W. Woolfolk as surety in the same manner that he indorsed the original note, prevented the action against Woolfolk as surety from being barred by the statute of limitations, and constituted a new date from which the statute of limitations began to run. "A new promise, in order to renew a right of action already barred, or *to constitute a point from which the limitation shall commence running on a right of action not yet barred,* shall be *in writing,* either in the party's own handwriting, or subscribed by him or some one authorized by him." Code, § 3-901. "A payment entered upon a written evidence of debt by the debtor, *or any other written acknowledgment of the existing liability,* shall be equivalent to a new promise to pay." § 3-903. "A new promise shall revive or *extend the original liability;* it shall not create a new one." § 3-904. In *Webb* v. *Carter,* 62 *Ga.* 416, the note in question was already barred by the statute, and was revived by a letter; the court holding that "the *written acknowledgment* of the existence of the liability to pay the note in the letter is equivalent to a new promise to pay it, and the effect thereof is to revive and *extend the original liability."* (Italics ours.) Under the facts of the instant case and the statutes above quoted, the action on the original note was not barred by the statute of limitations.

Woolfolk's contention places him in an anomalous position. He does not deny that his principal signed the note; he does not contend that the note has been paid, or that the consideration therefor failed; he acknowledges that he indorsed the note and the extension agreement; he makes no contention that the signature of his principal or his indorsement was procured through fraud; but he says that he should not be held liable—that his signature should count for naught. The question naturally arises, what was his object in indorsing the note? The record shows that he indorsed the note as surety to aid the Valley Milling Company of which he was president; and it was this *original note* which he indorsed, and which was marked Exhibit A and made a part of the petition, on which the suit was brought. Moreover, the extension agreement,

which he signed in exactly the same manner as he signed the original note, describes the original note, and provides that "we hereby assume and undertake the payment of *said* debt *under all the terms of said note* and security deed," and "this extension agreement is in no wise to be considered a payment of the original debt and that the force and effect of said deed is in no wise lessened by anything in this extension contract." Woolfolk is bound by these provisions as evidenced by his signature thereto. Whether the extension of the maturity date, without the indorsement of Hale, bars the action as to Hale, a cosurety on the original note and one of the defendants in this case, is not before us for determination. The record discloses no defense filed by Hale, and the petition alleges that "the said defendant J. W. Woolfolk stated that R. D. Hale, his cosurety on the original note, was no longer interested in the Valley Milling Company, and was insolvent, . . [and] it was at the special instance and suggestion of the said J. W. Woolfolk that no effort was made to obtain the indorsement of R. D. Hale as security on the extension agreement." Assuming the allegations of the petition to be true, as we must do in testing it against the demurrer, Woolfolk's hazard was not increased by virtue of the extension, as Hale was insolvent, and Woolfolk can gain no advantage because of the compliance with his request not to obtain the indorsement of Hale on the extension agreement.

Nor is there any merit in that ground of demurrer which avers "that no consideration is alleged or shown for the making of such extension agreement." The extension agreement, which is a part of the petition, after describing the debt evidenced by the original note, provides that Woolfolk's principal, "the Valley Milling Company, desires to procure an extension of the time of payment of said note;" and "now therefore, in *consideration* [italics ours] of said forbearance and extension of the time of payment of said note . . we hereby assume and undertake the payment of said debt under all the terms of said note." The petition further alleges that Woolfolk, the president of the Valley Milling Company, represented to the plaintiff that the company was not in position to pay the indebtedness represented by the note, "that he personally was not in position at that time to pay the indebtedness for which he was liable as surety or accommodation indorser," and "that if he could obtain an extension of the time of payment of

said indebtedness . . *it would be of great advantage and benefit to him personally* and possible aid to his principal, the Valley Milling Company." (Italics ours.) Under the allegations of the petition, the forbearance to collect the debt, and giving the defendant more time to raise the money, by extending the time of payment, was a valuable consideration flowing to Woolfolk; and he made several substantial payments on the original note after the extension was granted. Such payments showed that he recognized the validity of the extension agreement and his continued liability on the original note; and in addition thereto his signature on the agreement shows he had full notice and knowledge thereof. He now seeks to set aside as invalid the extension agreement which he signed, which he requested, and which was granted as an accommodation to him and his principal. The suit was not on the extension agreement, which merely extended the time of payment of the original note, but was on the original note, and there is no contention that the note was without consideration. The extension agreement was acted on by Woolfolk as a valid agreement, and nothing therein would relieve him of liability on the original note. The cases cited by the plaintiff in error are not applicable to the facts of the instant case. The petition as amended alleged a cause of action, and the court did not err in overruling the demurrers.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*